UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THOMAS L. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    2:20CV210-PPS |
| | ) |
| LIPARI FOODS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Thomas Smith drove a truck for Lipari Foods but lost his job when Lipari's Department of Transportation certified doctor found that Smith's blood pressure exceeded regulatory requirements thus disqualifying Smith for a Commercial Driver's License. Smith claims in this action against Lipari that he was "a qualified individual with a disability" because his own doctor cleared him to drive, and that Lipari's adverse employment action thus violated the Americans with Disabilities Act. Because Lipari was entitled to rely on the opinion of its own DOT-certified physician, Smith was not a "qualified individual" at the time of his termination. Summary judgment will therefore be GRANTED to Lipari.

**Undisputed Material Facts**

Lipari Foods first hired Smith as a truck driver in April 2018. [DE 24-1 at ¶6.] In order to operate a tractor-trailer for Lipari, Smith was required to have a Commercial Driver's License, which in turn required Smith to pass a Department of Transportation

physical. [DE 24-2 at 5 (p.21, ℓ. 23 - p.22, ℓ. 4).] Lipari used Concentra Medical Clinic to perform DOT certification physicals for its drivers. [DE 24-4 at ¶6.]

On April 16, 2018, Smith underwent a pre-employment DOT physical at the Concentra location in Hammond, Indiana. As part of Smith's physical, his blood pressure was found to be within acceptable limits, and he was given a 1-year medical card dated April 20, 2018, which would expire on April 20, 2019. [DE 24-5 at ¶5; DE 24-2 at 9 (p. 38, ℓ. 24 - p. 39, ℓ. 1).] Lipari's "Driver's License and Medical Card Renewal Policy," of which Smith was aware, required that drivers have their medical certification card and driver's license renewed at least 30 days prior to their expiration. [DE 24-1 at ¶¶8, 9; DE 24-4 at ¶7.]

On April 18, 2019, Smith returned to the Hammond Concentra for his recertification physical. At that time, his blood pressure was found to exceed permissible limits. [DE 24-5 at ¶6.] However, Smith's personal physician, Dr. Khaled Reheem-Farag, provided Smith a letter stating that he had seen Smith on April 18, 2019, and that Smith had blood pressure readings within DOT limits. [DE 24-2 at 45.] Smith provided the letter to Concentra. [DE 24-2 at 12 (p. 52, ℓℓ.8-12).]

Smith returned to the Hammond Concentra on April 19 and April 23 to have his blood pressure re-checked. Each time his blood pressure registered in excess of the allowable maximum. As a result, he was not given a DOT medical card by the medical examiner at Concentra. [DE 24-5 at ¶7; DE 24-2 at 12 (p.51, ℓℓ.21-22.).] Dr. Reheem-

Farag provided another letter dated April 23, 2019, advising that he had also seen Smith that day and concluded, consistent with what Concentra had found earlier in the day, that Smith was "not medically cleared for work." [DE 24-2 at 46.] The letter requests that Smith be "excuse[d]" until April 29, 2019 pending his next appointment and a medication change. [*Id.*]

There is a dispute about the equipment used at Concentra to take Smith's blood pressure readings. The Director of Medical Operations for the Concentra Medical Center in Hammond, Dr. Steven Zerilli, attests that the same identical equipment, and the same process, were used to measure Smith's blood pressure on each date in both 2018 and 2019. [DE 24-5 at ¶¶8, 9.] Dr. Zerilli further attests that individuals larger than Smith have had their blood pressure measured with the same equipment as was used with Smith and have had readings within permissible DOT limits. [*Id.* at ¶10.] Smith testified in his deposition that in 2019 medical personnel at Concentra used an improper instrument to attempt to measure his blood pressure, namely too small a cuff initially and later too large a cuff. [DE 24-2 at 15 (p.62, ℓ.4 - p.63, ℓ. 9); DE 24-2 at 6 (p.26, ℓ.18 - p.27, ℓ.23).]

The parties agree that DOT regulations permit a company to agree to allow a driver to go to a different DOT medical examiner after the driver has been disqualified by a DOT certified doctor. [DE 24-4 at ¶8; DE 26 at 5.] But absent the company's agreement, the doctor who initially disqualified the driver must be the one to restore

3

the driver's medical certification. [DE 24-4 at ¶8.] And Lipari did not approve Smith's request to obtain his DOT recertification from his own physician; indeed, it has never approved any driver to go to another DOT medical examiner after initially failing their DOT physical with the initial medical examiner. [DE 24-4 at ¶9.]

After failing his DOT recertification at Concentra, Smith sent a text message to his supervisor, Ramon Martinez, on April 23, 2019. Smith told Martinez he was going to turn in his uniforms and that it had been a pleasure working with him. [DE 24-1 at ¶11; DE 24-3 at 5.] Here's the full message:

> Gm theres a no go. Concentra So with that being said then I'm going to my dr. That's my final decision. Cause this place aint even taking bp correctly they lazy af. You arm suppose to be relaxed at heart level. Not supposed to have your arm extended and elevated straight out and supporting your own weight. I get frustrated talking about it. But since lipari wont accept my. It was a pleasure for this past year. I'll have uniforms ready this week to send bk[.]

[DE 24-3 at 5.]

Martinez understood the message as Smith's resignation from his job with Lipari. [DE 24-3 at ¶13.] Although Smith disputes that the text was a resignation, he never returned to Concentra after April 23. [DE 24-2 at 16 (p.66, ℓℓ.7-21); *id*. at 11 (p.47, ℓ.22 - p.48, ℓ.3).] Smith performed no more work for Lipari, and he stopped receiving communications from Lipari. [DE 24-2 at 16 (p.66, ℓ.21 - p. 67, ℓ.5).] Smith believes that he was involuntarily terminated because Lipari would not accommodate his request to go to another Concentra location or rely on Dr. Reheem-Farag for his DOT

4

recertification. [DE 24-2 at 7 (p.29, ℓℓ.2-21); *id*. at 16 (p.66, ℓ.21 - p.67, ℓ.5).] Smith applied for unemployment benefits shortly after sending the April 23 text. [DE 24-2 at 16 (p.67, ℓℓ.10-13).]

Dr. Reheem-Farag gave Smith a medical DOT-certification on May 1, 2020, a week after Smith sent the text that his supervisor construed as a resignation of his employment. [DE 24-2 at 17 (p.83, ℓℓ.9-24) ; DE 26-12 at 4.] Lipari's DOT Compliance officer rejected the DOT card issued by Dr. Reheem-Farag. [DE 26-13 at 2.]

## **Discussion**

Before getting into the meat of the arguments, I'll start with the standards that govern here because they are especially important in this case where there are genuine disputes, but those disputes are not material. Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, not every dispute between the parties makes summary judgment inappropriate. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.

For obvious reasons, commercial truck drivers in America are subject to a high degree of regulation relating to their health. Federal regulations governing Smith's employment with Lipari provide that:

> [a] person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so, and, except as provided in paragraph (a)(2) of this section, when on-duty has on his or her person the original, or a copy, of a current medical examiner's certificate that he or she is physically qualified to drive a commercial motor vehicle.

49 C.F.R. §391.41(a)(1)(i).  On the issue of high blood pressure, the regulations provide that a "person is physically qualified to drive a commercial motor vehicle if that person…[h]as no current clinical diagnosis of high blood pressure likely to interfere with his/her ability to operate a commercial vehicle safely." §391.41(b)(6).  In order to support an acceptable medical certificate for a commercial driver under the regulations, "the medical examination must be performed by a medical examiner listed on the National Registry of Certified Medical Examiners." §391.43(a).  Disqualification of a driver based on lack of the required medical certification (*see* §391.11(b)(4)) means that the driver "shall not drive a commercial motor vehicle," and that a "motor carrier shall not require or permit" the disqualified driver to drive a commercial motor vehicle. §391.15(a).

The ADA protects a "qualified individual with a disability," which the statute defines as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that

6

such individual holds or desires." 42 U.S.C. §12111(8). In ADA cases, the plaintiff has the burden of proving that he is "qualified" within the meaning of the statute. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 973 (7th Cir. 2000).

In *Bay*, which also involved a truck driver who was not permitted to resume driving until he obtained a DOT medical certificate, the Seventh Circuit provided a good deal of helpful analysis that is also applicable to this case. The inquiry into ADA "qualification" involves two steps. First, a court must "consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, *licenses*, etc.'" *Id.* at 974, quoting 29 C.F.R. app. §1630.2(m) (emphasis added). Only if the employee meets those requirements does the court then consider whether the individual can perform the essential functions of the job, with or without reasonable accommodation. *Id.* Another important clarification offered by *Bay* is that "[w]hether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made." *Id.*

The Seventh Circuit found that the driver in *Bay* could not meet his initial burden to demonstrate that he was qualified to return to work as a commercial truck driver because at the time he sought reinstatement, he did not possess the required DOT medical certification, a fact that was "fatal to his ADA claim." *Id.* *See also Jones v. Roadway Express, Inc.*, No. 01 C 6213, 2003 WL 76868, at *6 (N.D.Ill. Jan. 8, 2003)

7

(granting summary judgment to employer because plaintiff truck driver was not "qualified to be a truck driver during…times…when he did not have a valid DOT medical certification").

Lipari was entitled to rely on the medical examiners at Concentra. *See, e.g., E.E.O.C. v. Allied Systems, Inc.*, 36 F.Supp.2d 515, 522 (N.D.N.Y. 1999) ("Allied was entitled to require Eissing to obtain a DOTMEC from its company physician or, in the event that its company physician disagreed with Eissing's personal physician, to have an examination conducted by an independent third physician."). It is obvious that allowing employees free rein to choose doctors of their own, even DOT-certified doctors, could pose too great a risk for dangerous mischief. As the Seventh Circuit held in *Bay*: "At the point Dr. Patterson refused to recertify Bay, Cassens was not only entitled to rely on that judgment, but was legally required to refuse Bay's request to return to driving a commercial motor vehicle until he presented the proper certification." *Bay*, 212 F.3d at 974, citing *Albertsons, Inc. v. Kirkingburg*, 119 S.Ct. 2162, 2171 (1999).

The federal regulation on disqualification of drivers provides that a driver who is disqualified on the basis of a temporary or permanent revocation, suspension, withdrawal or denial of driving privileges, remains disqualified "until that operator's license, permit, or privilege is restored by the authority that revoked, suspended, withdrew, or denied it." 49 C.F.R. §391.15(b)(1). Lipari reads this provision as

requiring "the same DOT doctor or clinic who originally disqualified the driver to restore his driving privileges." [DE 23 at 19.] Smith's position is that "DOT regulations also permit the company to agree to allow the driver to go to a different DOT medical examiner if the driver has been disqualified by a DOT certified doctor." [DE 26 at 5.] Even Smith does not suggest that Lipari was *required* to allow him to use his own doctor for his DOT recertification. *Cambpell v. Federal Express Corp.*, 918 F.Supp. 912, 918 (D.Md. 1996) ("Federal Express was entitled to rely on the determinations made by *its* medical professionals") (emphasis in original).

Smith's contention that Concentra's exams were inaccurate is not a basis to second guess Lipari's reliance on it. It is true that sometimes there is a good reason to question an medical disqualification decision, such as when an employee is deemed unqualified based on a condition that is not covered by DOT regulations; or when there is evidence that the lack of certification is a pretext for discrimination; or where the evidence shows that an employer is "working in collusion" with a doctor to deny certification. *Bay*, 212 F.3d at 975. But none of those situations are evident here. On the contrary, in this case, as in *Bay*, "there is no evidence that [the employer] acted in any way to prevent [the plaintiff] from being recertified or that [the employer] acted in bad faith, nor is there any indication that [the employer's] reliance on [the doctor's] medical determination was unreasonable." *Id*. In other words,"[p]recedent teaches….that an employer is entitled to rely on medical determinations made by medical professionals."

9

*Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL 1574246, at *8, n.12 (N.D.Ill. July 12, 2004), citing *Bay*, 212 F.3d at 974 (collecting cases). As the Supreme Court has concluded in a similar circumstance, where a physician has declined to issue a DOT certification, that decision should not be second-guessed. *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 522 (1999).

Smith has done a clever job of setting forth factual assertions that support his grievance over losing his job, such as his contentions about Concentra's defective methods of measuring blood pressure and that his own doctor ultimately provided him with a DOT medical certification. But these are not *material* issues, given the analysis I have explained. Furthermore, although the parties have not referenced this, federal regulations contain a procedure for resolving "conflicts of medical evaluation," that is "disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications." §391.47(b)(2). That provision allows for submission of the rival positions to the Federal Motor Carrier Safety Administration for a decision.

Another district court in our circuit has held that a driver-plaintiff's failure to exhaust the available administrative remedy means he "will not be heard to argue that he would have qualified for DOT certification but for [the assigned examiner's] flawed physical examination procedures and medical conclusions." *Prado v. Continental Air Transport Co., Inc.*, 982 F.Supp. 1304, 1307 (N.D.Ill. 1997). See also *Harris v. P.A.M.*

10

*Transport, Inc.*, 339 F.3d 635, 638 (8th Cir. 2003) (holding that "failure to exhaust the remedies available under 49 C.F.R. §391.47 requires dismissal..., precluding Harris from obtaining review of his ADA claim in this court"). Lipari has not advanced such an argument here. Whether or not this administrative exhaustion was required of Smith, its availability bolsters my conclusion that Lipari was entitled to rely on Concentra's medical conclusion unless Smith successfully challenged it via the administrative procedure.

Smith also claims that Lipari violated the ADA by not providing him a "reasonable accommodation." It is true that the ADA makes it unlawful for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an *otherwise qualified* individual with a disability...." §12112(b)(5)(A) (emphasis added). "A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. §12111(8)).

But a reasonable accommodation does not include ignoring a physician's refusal to certify an employee. That's what the Seventh Circuit held in *Jones*, where the court found that the plaintiff "was not otherwise qualified to be a truck driver during the times in May and August 2000 when he did not have a valid DOT medical certification." *Jones*, 2003 WL 76868, at *6. The court went on to reject Jones' argument that he was entitled to an accommodation in the form of his employer putting pressure on the certifying medical examiner, holding that "[t]his request for elimination of a

11

barrier outside the work environment that included interfering with a doctor's professional opinion would not be reasonable." *Id*.

"Reasonable accommodation" under the ADA may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. §12111(9)(B). What these examples have in common is that they ameliorate barriers to the disabled person's *performance of* the work. None involves modifications of the job qualifications, or alternative means of demonstrating them, which is what Smith wanted in this case.

This understanding of "reasonable accommodation" is confirmed by language from the regulatory definition of the term. In 29 C.F.R. §1630.2(o)(ii), a reasonable accommodation is defined to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." Note that the employee is described as "qualified" already, and the "modifications or adjustments" merely "enable" him or her "to perform the essential functions" of the job, not to qualify for the

12

job in the first instance. Similarly here, Smith was not entitled to his requested accommodation in an attempt to meet the qualifications of the position.

## Conclusion

It is an undisputed fact that Smith never obtained a DOT medical recertification from Concentra, as Lipari required. His previous medical card expired on April 20, 2019. It is not critical to the ADA analysis to determine exactly when and how Smith's employment with Lipari ended. The bottom line is that at the time Smith's employment terminated, whether by resignation on April 23 or at some time later by firing or involuntary termination, Smith did not then possess the DOT certification from Concentra that Lipari required of him, and that was legally required to perform the job of a truck driver. So he was not a "qualified individual" for that job, and his termination does not violate the ADA.

**ACCORDINGLY:**

Defendant Lipari Foods' Motion for Summary Judgment [DE 22] is GRANTED.

**SO ORDERED**.

ENTERED: November 30, 2021.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE